[Civ. No. 15289.   Second Dist., Div. One.   Oct. 23, 1946.]

SECURITY INVESTMENT COMPANY OF RIVERSIDE (a Corporation), Respondent, v. CLINTON R. DOUGLAS et al., Defendants; MENDEL E. FINK, Appellant.

John F. Bender and G. Loshoncy for Appellant.

Donald J. Dunne for Respondent.

Ernest A. Oswald as amicus curiae on behalf of Respondent.

WHITE, J.—This is an appeal taken from a judgment and decree quieting plaintiff and respondent's title to three lots in the city of Los Angeles.

Plaintiff and respondent, hereinafter called "plaintiff," bases its title to each of said parcels of real property upon three tax deeds issued to the State of California in 1936 and tax deeds from the State of California to plaintiff issued October 13, 1944, pursuant to a sale held on said date in accordance with the provisions of division 1, part 6, chapter 7 of the Revenue and Taxation Code. At the trial it was stipulated that the property here involved was sold for taxes to the state on June 30, 1931, deeded to the state in 1936, and on October 13, 1944, was sold by the state to plaintiff.

Defendant and appellant Mendel E. Fink, hereinafter called "defendant," bases his title to the three lots here in question upon three street improvement bonds issued on March 3, 1922, by the treasurer of the city of Los Angeles pursuant to the provisions of the Improvement Act of 1911 then in force and effect.

On October 30, 1935, Trompeter and Company instituted an action in the Superior Court of Los Angeles County for the foreclosure of said street improvement bonds. On February 21, 1939, a judgment was entered in favor of Trompeter and Company, and thereafter, on March 4, 1940, pursuant to such judgment, a commissioner's deed was issued to Trompeter and Company which was duly recorded on March 8, 1940.

Through the medium of duly recorded deeds, the property changed hands several times until on October 13, 1944, a deed was recorded, executed by The Sterling Company, a corporation, to defendant, conveying to him said property. Defendant's title, if any, therefore rests upon and flows by direct chain of title from street improvement bonds issued on March 3, 1922, by the city of Los Angeles pursuant to the provisions of the Improvement Act of 1911, and which bonds were foreclosed in 1940 by virtue of the commissioner's deed to the grantee named therein.

In the trial court, defendant introduced into evidence the delinquent tax list for the year 1935 showing that the publication of the entire delinquent list was had in more than one newspaper of general circulation in the county. In the court below and now on appeal, defendant contends that such divided publication was contrary to section 3766 of the Political Code (now included in Rev. & Tax. Code, §§ 3391 et seq.), and that

tax sales or tax deeds in reliance thereon were therefore void.

Plaintiff, on the contrary, contends that the defective publication, though it might be considered as fatal under the *in invitum* rule, was cured by the curative act enacted by the Legislature in 1943, entitled "An act to validate certain acts of counties, cities and counties and of their officers relating to taxation of property." (Stats. 1943, p. 1993; 3 Deering's Gen. Laws, Act 8443.)

█ Defendant urges that his bond became a lien on the property in 1922, which was prior to any tax delinquency and was prior to the tax deed issued in the case at bar, which was in 1936; that his equitable estate was converted into a legal estate at the time the commissioner's deed was executed on March 4, 1940, which was prior to the passage of the aforesaid Curative Act of 1943; that his vested right in the property here involved intervened prior to the effective date of the Curative Act of 1943, and, therefore, said act is not applicable. In this regard, defendant relies upon the cases of *Miller* v. *McKenna,* 23 Cal.2d 774 [147 P.2d 531]; *Chambers* v. *Duvall,* 26 Cal.2d 139 [156 P.2d 921]; *City of Compton* v. *Boland,* 26 Cal.2d 310 [158 P.2d 397], and *Barrett* v. *Brown,* 26 Cal.2d 328 [158 P.2d 567]. The holding in these cases may be epitomized by saying that the aforesaid curative act may not be utilized to deprive one of his estate without due process of law and "by a mere legislative rescript pronounce as valid a deed which was void when it was made." (*Miller* v. *McKenna, supra,* p. 784.)

*Barrett* v. *Brown, supra,* relied upon by defendant, was a case involving alleged defective publication of a delinquent tax list, in that only a portion of such tax list was published in the newspaper containing notice of the tax delinquency affecting the property involved. In the cited case, the Supreme Court, at page 330, said:

"Here there was an actual publication of a portion of the delinquent tax list which included the plaintiff's property. This publication was in a newspaper of general circulation published in the county and in the city in which the plaintiff's property was located. The publication was complete in every respect except that it did not include all of the property in the county delinquent for nonpayment of taxes and sought to be sold at the same time. As above stated the publication of the entire delinquent list was split between more than one newspaper of general circulation published in the county. We may assume the application of the general provision as a pre-

requisite step in tax sale proceedings. We may also assume that the defective publication, without more, would have been fatal under the *in invitum* rule. But in 1943 the Legislature enacted a curative act entitled: 'An act to validate certain acts of counties, cities and counties and of their officers relating to taxation of property.' (Stats. 1943, p. 1993.) The content and effectiveness of that act and its application in pending litigation have been considered in the recent cases of *Miller* v. *McKenna,* 23 Cal.2d 774 [147 P.2d 531]; *Chambers* v. *Duvall, ante,* p. 139 [156 P.2d 921]; and *City of Compton* v. *Boland, ante,* p. 310 [158 P.2d 397]. It was thereby determined that, assuming certain jurisdictional steps to have been taken, the details in the mode or manner of pursuing those steps may be changed by the Legislature within constitutional bounds and that if such steps have been defectively pursued the irregularities may be cured by the validating act. In *City of Compton* v. *Boland, supra,* it was said: 'If the notice is adequate to comply with due process the Legislature may make changes in the mode or manner of giving notice, or the details of the matter to be continued therein.' There is no question that notice of the delinquency of the tax on the plaintiff's property was contained in a newspaper of general circulation published in the county in accordance with the general provision of the statute. The fact that other property was not included in the publication does not vitally disparage the fact of notice to the plaintiff; nor has the plaintiff been deprived of any constitutional right. Cases of so-called 'split' publication or publication in a supplement to, rather than in the newspaper itself, where a curative act was not involved, are not in point. Such cases deal with the question of the intent of the Legislature regarding publication.

''The intent of the Legislature by the general provision to require publication of the entire delinquent list in one newspaper may not be disputed. We have here the question of the effect of the validating act in respect to the sale of property included in the publication of a portion of the delinquent list, when another portion of the delinquent list was omitted from that publication or was published in another newspaper. Our decisions in the foregoing cited cases are determinative of the question and, since the method of publication is of legislative direction generally, it is also subject to the curative power of the Legislature. The effect of the validating act in this case is to bring the publication of the 1937 delinquent list in Los

Angeles County under the general provision of section 3766 of the Political Code (now Rev. & Tax. Code, § 3356), and to cure the irregularity in the method pursued thereunder.''

The foregoing decision is determinative of the question presented to us in the instant case wherein the facts are analogous. We therefore conclude that the notice herein was adequate to comply with due process, and the method of publication being of legislative direction generally, it is also subject to the curative power of the legislative body.

Relying on the case of *Miller* v. *McKenna, supra,* wherein the Supreme Court held that a tax delinquency in the year 1911 was void because of a defect in the notice of sale, defendant contends that in the case now engaging our attention the Curative Act of 1943 affords plaintiff no relief because defendant acquired ''intervening rights'' prior to the enactment of said Curative Act in 1943. In the case last above cited, as well as in the cases of *Chambers* v. *Duvall, supra,* and *City of Compton* v. *Boland, supra,* it was determined that, assuming certain jurisdictional steps to have been taken, the details in the mode or manner of pursuing those steps may be changed *within constitutional bounds,* and that if such steps have been defectively pursued the irregularities may be cured by the validating act. ▮▮ That the procedure adopted herein relative to ''split'' publications of the delinquent tax list in question was fatally defective does not of itself prevent the exercise of the curative power, for, as said in *Miller* v. *McKenna, supra,* page 781, ''If it was not fatally defective it would stand in no need of the healing power.'' The question, therefore, is whether application of the curative power under the facts of this case would transgress the inhibitions of the federal and state Constitutions. In other words, was the defect herein jurisdictional? In *Miller* v. *McKenna, supra,* page 782, jurisdictional requirements are defined as:

''(a) A duly constituted taxing authority;

''(b) property to be taxed within the territorial jurisdiction of the taxing body;

''(c) property or subject matter legally subject to the tax; and

''(d) sufficient notice and opportunity for hearing to constitute compliance with due process.''

There can be no question but what the first three requirements were present in the case now before us, and we are persuaded that the fourth requirement was also met. As here-

tofore pointed out, there was an actual publication of a portion of the delinquent tax list which included the property claimed by defendant. The publication was in a newspaper of general circulation, published in the county and in the city in which such property was located. As was said in *Barrett* v. *Brown, supra,* page 331, ''The fact that other property was not included in the publication does not vitally disparage the fact of notice to the plaintiff; nor has the plaintiff been deprived of any constitutional right.'' We therefore hold that, under the facts of the instant case, the publication or notice given was adequate to comply with due process.

Finally, defendant contends that tax deeds to and from the state and special assessments, or deeds issued thereon, are on a parity, and that the holder of a deed from the state based upon a sale for delinquent general taxes does not have a right superior to that of the holder of title by deed after sale for delinquent special assessments. (Rev. & Tax. Code, § 3900.)

In this contention defendant must be upheld. Under the facts of the case with which we are here concerned and, upon the authority of *Monheit* v. *Cigna,* 28 Cal.2d 19 [168 P.2d 965], it must be held that the holders of deeds herein own the property as tenants in common.

By its complaint filed herein, plaintiff sought to quiet title to five lots numbered 458, 459, 460, 461 and 462. By his answer defendant disclaimed any right, title or interest in or to lots 461 and 462. That portion of the judgment quieting title in the last two mentioned lots in plaintiff must stand.

For the reasons herein cited, the judgment is therefore modified to provide that the title to lots 458, 459 and 460 here involved is held by plaintiff and defendant Mendel E. Fink as tenants in common, each owning an undivided one-half interest therein, subject to a lien in favor of each tenant against the entire property in the amount which was paid for his or its interest, and as so modified, the judgment is affirmed. Neither party to recover costs on this appeal.

York, P. J., and Doran, J., concurred.


A petition for a rehearing was denied November 21, 1946, and opinion and judgment were modified to read as above. Respondent's petition for hearing in Supreme Court was denied Jan. 16, 1947.