[Civ. No. 15108.   Second Dist., Div. One.   May 31, 1946.]

JACOB L. COOPER et al., Appellants, v. LOS ANGELES HOME COMPANY (a Corporation), Respondent.

John F. Bender and G. Loshoncy for Appellants.

Newton E. Anderson and Arthur E. White for Respondent.

YORK, P. J.—By the instant action, plaintiffs seek to quiet their title as against defendant corporation to 170 acres of land, particularly described in the complaint herein, it being stipulated that said corporation was the owner thereof on June 30, 1920, and until September 1, 1931, when the property was deeded to the State of California for delinquent taxes. It was further stipulated that at all material times said property was situate within the Newhall Elementary School District and the Los Angeles City High School District, and that said school districts were separate entities.

At the trial, plaintiffs introduced in evidence (1) a tax deed executed on September 1, 1931, conveying the property in question to the State of California; (2) a tax deed executed on November 22, 1943, conveying said property to the plaintiffs. Defendants introduced (1) a certified copy of page 65, volume 119 of Assessment Book, commonly called the Assessment Roll, for the county of Los Angeles for the fiscal year 1925-1926; (2) certified photostatic copy of certain pages of the minutes of the Board of Supervisors of Los Angeles County for its meeting of September 8, 1925; (3) certified photostatic copy of four pages, being a portion of the published delinquent tax list for the fiscal year 1925-1926. No oral testimony was presented.

Thereafter, the court made its findings of fact to the effect that plaintiffs were not the owners of the property in question; that defendant corporation "is the owner and entitled to

possession of the above described real property''; that plaintiffs had paid $501 for the tax deed from the State of California and also $34.01 for subsequent taxes. An interlocutory decree was accordingly entered quieting the title to said property in defendant corporation and enjoining plaintiffs from asserting any claim thereto, provided that defendant within thirty days after entry of said interlocutory judgment, reimburse plaintiffs in the amount of $535.01. Such payment having been made, a final judgment was entered quieting title to said property in said defendant corporation. This appeal is prosecuted by the plaintiffs from both the interlocutory and final judgments.

It is here contended by appellants (1) that their tax title was sufficient to prove their case; (2) that respondent's claimed irregularity, i. e., that the assessment roll for 1925-26 did not comply with subdivision 11 (later changed to 12) of section 3650 of the Political Code, as it then read, is without foundation; (3) that with respect to respondent's claim that the published delinquent list for 1925-26 did not comply with section 3764 of the Political Code, an examination of that list shows that it contained each and all of the requirements of said section; (4) that the irregularities, if any, not being jurisdictional, were cured by the Curative Act of 1943.

Respondent, in support of the judgment of the trial court, argues that the omission of any reference to the Los Angeles City High School District on the assessment roll for 1925-26, rendered the assessment and tax levy void, because, under section 3650(11) of the Political Code, in effect at that time, the assessment was required to show ''The school, road, and other revenue districts in which each piece of property assessed is situated.''

In answer to this, appellant urges that the phrase ''Newhall School District,'' as shown on the roll, was intended by the assessor to mean each and every school district serving the Newhall district, in which the property here in question is situated, including elementary and high schools, colleges and universities, and that such phrase, together with the heading of column 8 of the roll, to wit: ''Total State, County, Road and School Tax,'' constituted a substantial compliance with the provisions of section 3650(11) *supra*. Also, that since respondent failed to exercise its remedy to appear before the board of equalization to register its objections to the assessment roll, it is deemed to have waived such objections.

The same question arose in the case of *Mais* v. *Poinsettia*

*Land Co.,* 71 Cal.App.2d 347 [162 P.2d 925], one of the points urged for a reversal of the judgment therein being that "the assessment roll failed to show the Compton Union High School District as one of the school or revenue districts in which the property was located, as required by then section 3650(11) of the Political Code." It appears from the opinion therein that on September 6, 1927, the Board of Supervisors of Los Angeles County levied a tax upon all real and personal property in the Compton Union High School District, including the subject property, for the maintenance of the Compton Union High School District; that subsequently the county assessor in making up the assessment roll showed opposite the printed words "School Dist." the rubber stamped words "Compton City," that being the only reference on the roll to any school district. The court in said case stated at page 350: "It appears from appellant's brief that the Compton City School District is an elementary school district, the territory of which, with certain surrounding territory, is included in the Compton Union High School District. If the statement on the assessment roll meant only that the property was in the Compton City School District, it would necessarily mean that it was also within the Compton Union High School District and would thus meet the specific objection which appellant makes. It is not contended that the description was inadequate for any other reason. Undoubtedly, it would have been competent for the Legislature to provide for an assessment roll which would describe the property assessed in any manner that would show it to be within the district covered by the levy which was the foundation of the assessment. The tax was levied upon the lands situated in the high school district and for the benefit of the district; there was also a description of the property which was sufficient to show that it was within the high school district for which the tax had been levied. Under those circumstances, an irregularity consisting of a failure to comply with any legal requirement for a more specific description would be subject to correction by a validating act. The construction heretofore given to the 1943 act . . . is broad enough to encompass such irregularities as the one here claimed in the description of the property upon the assessment roll."

In the instant case, it is not contended that the tax levied was incorrect or that it did not include the assessment for the Los Angeles City High School District. There appears to

be no doubt that such tax, which was levied by the board of supervisors, included assessments for both the Newhall School District and the Los Angeles City High School District, and it is stipulated that the subject property is situated within both districts.

The Curative Act of 1943 (Stats. 1943, p. 1993; 3 Deering's Gen. Laws, Act 8443) has been construed and interpreted by the Supreme Court in *Miller* v. *McKenna,* 23 Cal.2d 774 [147 P.2d 531]; *Barrett* v. *Brown,* 26 Cal.2d 328 [158 P.2d 567]; *City of Compton* v. *Boland,* 26 Cal.2d 310 [158 P.2d 397]; and *Chambers* v. *Duvall,* 26 Cal.2d 139 [156 P.2d 921]. In the last cited case, a discussion of said Curative Act contains the following language (p. 143): "Furthermore, in 1943 (Stats. 1943, p. 1993) the Legislature enacted a validating and ratifying statute, by which it provided that every act and proceeding theretofore taken relative to the preparation, computing or fixing the budget or tax rate, or to the assessment or equalization of property or to the levy of taxes thereon or to tax sales or certificates of tax sales, tax deeds, or other conveyances resulting from such assessment, equalization and levy, were thereby confirmed, validated and declared legally effective. By section 2 of the act its operation was limited to the correction of defects, irregularities and ministerial errors which the Legislature originally could have omitted from the statutory requirements under which the acts validated were taken, and to the validation of acts and proceedings to the extent permitted under the state and federal Constitutions."

In the Boland case, it was stated at page 314: "Here no intervening rights are involved and the irregularity complained of, not being such as to deprive the officials of jurisdiction to levy the tax, must be deemed to have been cured by the 1943 act."

In *Mais* v. *Poinsettia Land Co., supra* (71 Cal.App.2d 347, 349), the defendant, as here, sought to escape from the operation of the Curative Act, contending that since the corporation owned the property before the assessment was levied, it had a vested right which could not be taken from it by retroactive legislation. The court held against such theory, citing the Boland case as authority.

█ █ Other irregularities which it was claimed rendered the sale to the state void, and which were upheld by the trial court, were (1) that because the closing statement in the published delinquent tax list stated "for which the property *was*

*sold* to the State in the manner as follows," a taxpayer reading said notice would be justified in believing his property was already sold and that it was too late for him to redeem it; (2) that the delinquent list failed to show with respect to the property here in question an amount equal to the total amount of all taxes, assessments, penalties and costs due.

The opening statement of said notice of publication reads as follows: "Default having been made in the payment of taxes and assessments levied in the year 1925 pursuant to law, which said taxes and assessments are shown by the Tax Rolls of the County of Los Angeles for the year 1925, and are collectible by the Tax Collector of the County of Los Angeles for the year ending June 30, 1926, upon the property described in the delinquent tax list hereto appended;

"Now, Therefore, I, W. O. Welch, County Tax Collector, in and for the said County of Los Angeles, by virtue of authority in me vested by law, hereby give public notice that *unless the total amount of all taxes, assessments, penalties and costs due* and which are a lien on the property delinquent as appears by said list *are paid*, I as said Tax Collector, in the office of the Tax Collector, Hall of Justice, in the City of Los Angeles, County of Los Angeles, State of California, on Wednesday, the 30th day of June, 1926, at the hour of 5 o'clock p. m. *will sell* all of said real estate upon which taxes and assessments are a lien to the State of California." (Emphasis added.)

It would seem that such recital was sufficient to give notice that the property would be sold to the state for delinquent taxes, assessments, penalties and costs, as therein stated. However, as stated in *City of Compton* v. *Boland, supra,* (26 Cal.2d 310, 316): "We may assume that the requirement for publication of delinquency and notice (Pol. Code, § 3764) constitutes a jurisdictional prerequisite; but the form and content thereof are details which are subject to legislative or administrative discretion, and defects therein are related to the mode of the exercise of the power, which being merely directory, may be made effective by a curative act. (*People* v. *Van Nuys Lighting District*, 173 Cal. 792, 797 [162 P. 97, Ann.Cas. 1918D 255].)

"The purpose of the validating statute is to rehabilitate tax-deeded property and procure its return to the tax rolls. The accomplishment of the purpose is conducive to equality in assessments for the support of government, and therefore to

stability in government. It is a matter of public importance, therefore, that the validating act be applied to effectuate the legislative purpose so long as constitutional mandates are observed.

"We conclude that the irregularity directly under discussion, namely, the statement of incorrect amounts in the notices of delinquency, as well as the irregularities in the fixing of the budget and tax rates, were cured by the 1943 act. The same result follows as to the defendants' remaining claims of irregularity which are: that the words 'penalties and costs' were omitted from a specified statement appended to the notice, . . .

"The asserted omission of the words 'penalties and costs' or 'penalties,' is the same irregularity involved in *Bussenius* v. *Warden,* 71 Cal.App. 717 [236 P. 371]; *Jones* v. *Walker,* 47 Cal.App.2d 566 [118 P.2d 299]; *Miller* v. *McKenna, supra* [23 Cal.2d 774 (147 P.2d 531)], and other cases cited therein. Prior to the adoption of the 1943 curative act an irregularity in the contents of the published delinquent list and appended notice which indicated that penalties and costs were not included in the amount stated invalidated the tax sale. In view of the effect of the 1943 act in curing that irregularity, the cases relied on by the defendants are not controlling."

From the foregoing, it would appear that the claimed irregularities which formed the basis of the judgment of the trial court were validated by the Curative Act of 1943, *supra,* and that the tax deeds from the county of Los Angeles to the State of California, and from the State of California to the appellants, vested title to the property conveyed thereby in the latter.

For the reasons stated, the final judgment is reversed. The appeal from the interlocutory judgment is dismissed.

Doran, J., and White, J., concurred.